IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

GWENDOLYN MARTIN,           )
                            )
            Plaintiff,      )
                            )
        v.                  )           CV 116-144
                            )
NANCY A. BERRYHILL, Acting  )
Commissioner of Social Security )
Administration,[1]          )
                            )
            Defendant.      )
_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Gwendolyn Martin appeals the decision of the Acting Commissioner of Social Security

denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security

Income ("SSI") under the Social Security Act.  Upon consideration of the briefs submitted by

both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS**

and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be

**CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

I.      **BACKGROUND**

Plaintiff applied for DIB and SSI on June 23, 2011, alleging a disability onset date of

May 29, 2010.  Tr. ("R"), pp. 382-85, 386-92.  Plaintiff was forty-seven years old at her alleged

disability onset date and fifty-one years old when the Administrative Law Judge ("ALJ") issued

---

[1]The Court takes judicial notice that on January 20, 2017, Nancy A. Berryhill became the
Acting Commissioner of the Social Security Administration.  Pursuant to Fed. R. Civ. P. 25(d),
the Court **DIRECTS** the Clerk of Court to substitute Nancy A. Berryhill as Defendant.

the decision currently under consideration. R. 55, 382. Plaintiff has an eighth grade education, later earned her GED, and has worked as a cashier, garment inspector, and waitress. R. 440, 5001. The Social Security Administration denied Plaintiff's applications initially and on reconsideration. Plaintiff requested a hearing before the ALJ, and the ALJ held a hearing on November 27, 2012. R. 109-35. The ALJ rendered an unfavorable decision on January 8, 2013, R. 237-69, and Plaintiff requested Appeals Council ("AC") review. On May 30, 2014, the AC vacated the ALJ's decision and remanded. R. 270-72. On remand, the ALJ held another hearing on November 4, 2014. R. 26. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Stephen Davis, a Vocational Expert ("VE"). R. 71-108. On February 26, 2015, the ALJ issued an unfavorable decision. R. 26-55.

Applying the five-step sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since May 29, 2010, the alleged onset date. (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

2. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spines, epilepsy/seizure disorder (recently diagnosed as pseudoseizures [current preferred term – psychogenic non-epileptic seizures]), depression, anxiety, PTSD, somatoform disorder, borderline intellectual functioning, bipolar disorder, and an eating disorder (recently diagnosed as cyclical vomiting syndrome) (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the additional limitations: Frequent climbing of ramps and stairs; no climbing of ladders ropes or scaffolds;

2

frequent balancing, stooping; no kneeling crouching or crawling; avoid all exposure to dangerous machinery and heights; avoid all exposure to jobs [requiring] driving; limited to occupations requiring no more than simple, routine repetitive tasks not performed in a fast paced production environment involving only simple work related instructions and decisions and relatively few work place changes; and limited to occupations requiring no more than occasional interaction with co-workers and no interaction with members of the general public.

5. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). The claimant has not been under a disability, as defined in the Social Security Act, from May 29, 2010, through the date of this decision. (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

R. 26-55.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 2-5, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues the Commissioner's decision is not supported by substantial evidence because the ALJ (1) erred in determining Plaintiff's impairments did not meet or medically equal Listings 11.02, 12.04, 12.05C, and 12.07 at step three of the sequential evaluation process, and (2) failed to properly consider and weigh the opinions of Plaintiff's treating physicians. (See doc. no. 10 ("Pl.'s Br.").) The Commissioner argues substantial evidence supports the ALJ's finding that Plaintiff's conditions did not meet or equal any of the listed impairments, and the ALJ properly considered and weighed the opinions of Plaintiff's treating physicians. (See doc. no. 11 ("Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. Plaintiff Failed to Establish Disability under the Listings.

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that her condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014); Wilkinson ex rel. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

In order to show that her impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

An ALJ's finding as to whether a claimant meets a listed impairment need not be explicit and may be implied from the record. Hutchison v. Bowen, 787 F.2d 1461, 1463 (11th Cir. 1986) (holding ALJ implicitly found claimant did not meet Listing because it was clear form record ALJ considered relevant law and evidence). Furthermore, although an ALJ must consider the Listings in the disability determination, the ALJ is not required to mechanically recite the evidence leading to the ultimate determination. Bellew v. Acting Comm'r of Soc. Sec., 605 F. App'x. 917, 920 (11th Cir. 2015); Popham v. Colvin, No. 2:14-CV-157, 2016 WL 3004661, at *5 (S.D. Ga. May 24, 2016), report and recommendation adopted, No. 2:14-CV-157, 2016 WL 3453426 (S.D. Ga. June 17, 2016), aff'd sub nom. Popham v. Acting Comm'r of Soc. Sec., No. 16-14077, 2017 WL 765773 (11th Cir. Feb. 28, 2017).

### 1. Plaintiff Failed to Establish a Mental Impairment Satisfying the Criteria of Listing 12.05C.

"Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this general diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. 12.00(A) (stating that an impairment must satisfy the diagnostic description and one of the four sets of criteria to qualify under Listing 12.05); see also Perkins v. Comm'r Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014) (per curiam); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

The criteria of 12.05(C) are met when "[there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and

significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05.

Thus, a claimant generally meets the Listing 12.05(C) criteria when she, in addition to satisfying

the diagnostic definition, "presents a valid IQ score of 60 to 70 inclusive, and evidence of an

additional mental or physical impairment that has more than 'minimal effect' on the claimant's

ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir.

1992). To satisfy the additional impairment prong of Listing 12.05(C), Plaintiff must show the

impairment "significantly limits [her] physical or mental ability to do basic work activities, *i.e.*,

is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920(c)." Willard v. Colvin,

No. 5:12-cv-03536-JHE, 2014 WL 1664300, at *4 (N. D. Ala. Apr. 25, 2014) (citing Listing

12.00(A).)

Plaintiff claims the ALJ erred in evaluating her impairments under 12.05(C) because she

has qualifying IQ scores. Pl.'s Br., p. 4. The ALJ recognized Plaintiff received full-scale IQ

scores of 64 and 70, but went on to explain that Plaintiff did not have the requisite deficits in

adaptive functioning. R. 42-43. In support of this finding, the ALJ relied on the opinions of

consultative psychologists Dr. Theodore A. Daniel and Dr. John C. Whitley, Plaintiff's activities

of daily living, and Plaintiff's work history.

Dr. Whitley evaluated Plaintiff on December 2, 2009, and noted Plaintiff could follow

directions, organize her own schedule, bathe, dress for weather, cook simple meals, use a

microwave, make simple purchases, wash dishes, fold clothes, make beds, and manage her

personal finances. R. 566. Dr. Whitley evaluated Plaintiff's IQ, and Plaintiff received a full

scale IQ score of 64. R. 567. Dr. Whitely opined the score was a mild underestimation of

Plaintiff's true abilities and was incongruent with Plaintiff's prior employment as a cashier. Id.

Dr. Whitley diagnosed Plaintiff with borderline intellectual functioning. R. 568.

Dr. Whitley also issued a medical source statement opining Plaintiff could understand, remember, and carry out simple instructions, and could make judgments on simple work-related decisions. R. 561. Dr. Whitley further opined Plaintiff was only mildly limited in understanding, remembering, and carrying out complex instructions, and in making judgments on complex work-related decisions. Id. Dr. Whitley found Plaintiff was not limited in her ability to interact with the public, but was mildly limited in her abilities to interact appropriately with supervisors and coworkers, and respond to usual work situations and changes in a routine work setting. R. 562.

On October 11, 2011, Dr. Daniel saw Plaintiff. R. 1706. Dr. Daniel noted Plaintiff obtained an eighth grade education while enrolled in regular classes, was never retained, and had above average grades. Id. Dr. Daniel determined Plaintiff's full scale IQ score was 70. R. 1708. Dr. Daniel opined Plaintiff was able to understand and carry out simple instructions, get along with others, and could manage her own funds. R. 1709. Dr. Daniel did not diagnose Plaintiff with intellectual disability or borderline intellectual functioning. See generally R. 1706-09.

The ALJ also examined Plaintiff's activities of daily living and work history. R. 43. The ALJ cited a July 2011 Function Report wherein Plaintiff reported she lived alone, could make her bed, perform basic grooming tasks, take medication, prepare simple meals, dust, do laundry, go to church and appointments, use public transportation, shop for food and clothes, pay bills, count change, handle a savings account, use a checkbook/money order, and watch television. R. 52. Plaintiff also reported spending time with others, talking on the phone, and visiting the doctor's office. R. 450. Plaintiff reported she could pay attention to tasks until they were completed, could follow written instructions and spoken instructions, got along "very well" with authority figures, and could handle changes in routine. R. 450-52.

8

In January 2012, Plaintiff completed another Function Report substantially similar to her July 2011 Function Report. R. 472-79. The record reveals Plaintiff was capable of frequent exercise, and had fiancé she later married. R. 6205, 6492. As the ALJ discussed, Plaintiff's earnings showed consistent employment from 1987 to 2007, and Plaintiff's ability to maintain employment, including work as a cashier, undermines any claim that Plaintiff's intelligence affects her ability to work. R. 43.

In sum, substantial evidence supports the ALJ's finding that Plaintiff did not satisfy Listing 12.05(C), despite the existence of full-scale IQ scores of 64 and 70. Plaintiff was not diagnosed with intellectual disability, and instead, Dr. Whitley diagnosed Plaintiff with borderline intellectual functioning, which is mutually exclusive of intellectual disability. See Jordan v. Comm'r of Soc. Sec., 470 F. App'x 766, 768-69 (11th Cir. 2012) (noting claimant's diagnosis of borderline intellectual functioning, which is "mutually exclusive of mental retardation" supported conclusion claimant's impairments did not meet Listing 12.05).

Furthermore, the ALJ thoroughly evaluated Plaintiff's daily activities of living and work history, and properly concluded Plaintiff did not have deficits in adaptive functioning. See Perkins, 553 F. App'x at 873 (affirming ALJ's conclusion that plaintiff did not meet Listing 12.05(C) despite IQ in required range due to plaintiff's work experience and daily living activities); Harris v. Comm'r of Soc. Sec., 330 F. App'x 813, 815 (11th Cir. 2009) (finding substantial evidence claimant did not meet Listing 12.05(C), where he "was never diagnosed with mental retardation, only borderline intellectual functioning" and ability for self-care, managing money, and communicating effectively with others ruled out deficits in adaptive functioning necessary to meet Listing); Davis v. Astrue, Civ. Act. No. 2:07cv880, 2008 WL

2939523, at *3 (N.D. Ala. July 25, 2008) (relying on medical opinion that adaptive behavior may elevate claimant with IQ scores in mild range of intellectual disability to borderline intellectual functioning that does not satisfy Listing 12.05(C)).

**2.    Plaintiff Failed to Establish a Mental Impairment Satisfying Listing 12.04.**

Listing 12.04 addresses affective disorders, and provides that such a disorder is "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. 404, Subpart P, Appendix 1, § 12.04. A claimant meets the criteria for Listing 12.04 if she satisfies the criteria in paragraphs A and B or A and C. Id. §§ 12.00A, 12.04. Paragraph A identifies symptoms commonly associated with such disorders, and requires the claimant to provide medically documented findings of one or more of the listed symptoms. Id. To satisfy 12.04A, a claimant must provide medical documentation of depressive syndrome, manic syndrome, or bipolar syndrome. Id. § 12.04A.

Paragraph B lists impairment-related functional limitations that are incompatible with the ability to do any gainful activity. Id. To satisfy the criteria, a claimant must show at least two of the following:  (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. Id. § 12.04B.

The term "marked" means more than moderate but less than extreme and covers a limitation that interferes "seriously with [the claimant's] ability to function independently,

appropriately, effectively, and on a sustained basis." Id. § 12.00C. "[E]xacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace" qualify as "episodes of decompensation." Id. § 12.00C(4). The criterion of "repeated" episodes of "extended duration" are met when a claimant has three episodes within one year, or has an average of one episode, lasting for at least two weeks, every four months. Id.

If the paragraph B criteria is not met, Plaintiff can still meet Listing 12.04 if she satisfies the paragraph C criteria. Paragraph C requires a "[m]edically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support." In addition, Plaintiff must prove one of the following: (1) repeated episodes of decompensation, each of extended duration; (2) a residual disease process resulting in "such marginal adjustment" that "even a minimal increase in mental demands or change in the environment" would cause decompensation; or (3) a current history of at least one years' "inability to function outside a highly supportive living arrangement," and an indication that this arrangement needs to be continued. Id. § 12.04C; Himes v. Comm'r of Soc. Sec., 585 F. App'x 758, 763 (11th Cir. 2014).

Here, the ALJ determined Plaintiff did not meet listing 12.04 because Plaintiff's mental impairments did not satisfy either the paragraph B or paragraph C criteria of Listing 12.04. R. 30, 46-48, 52. Upon review of the entire record, the ALJ determined Plaintiff did not meet the paragraph B criteria because Plaintiff had only mild limitations in activities of daily living,

moderate deficiencies in social functioning, and concentration, persistence and pace, and no episodes of decompensation. R. 30, 52.

As the ALJ discussed, Dr. Whitley's evaluation revealed Plaintiff could follow directions, organize her own schedule, bathe and dress for weather, cook simple meals, use a microwave, make simple purchases, wash dishes, fold clothes, make beds, and manage her personal finances. R. 566. Dr. Whitely also opined Plaintiff was alert, friendly, had understandable speech, and had no indication of disorganized thought processing. Id. In his medical source statement, Dr. Whitley found Plaintiff had less than marked restrictions in her activities of daily living, social functioning, ability to maintain concentration, persistence, or pace, and did not have any episodes of decompensation. R. 561-64. The ALJ assigned Dr. Whitley's opinion considerable but not controlling weight. R. 52.

The ALJ also cited evidence from Plaintiff's Function Reports indicating she could make her bed, perform basic grooming tasks, take medication, prepare simple meals, dust, do laundry, go to church and appointments, use public transportation, shop for food and clothes, pay bills, count change, handle a savings account, use a checkbook/money order, and watch television. Id. Plaintiff was married, frequently hosted family and friends for social visits, and made plans to travel to Virginia to visit her daughter. R. 53. Thus, substantial evidence supports the ALJ's determination Plaintiff did not meet the paragraph B criteria.

The ALJ then considered the additional functional criteria in paragraph C for Listing 12.04, finding Plaintiff did not have a mental impairment or combination of mental impairments meeting the paragraph C criteria. R. 30. As for the first condition, the ALJ noted Plaintiff "has not had any episodes of decompensation of an extended duration." Id. As for the second condition, the ALJ indicated Plaintiff had only mild or moderate limitations in activities of daily

living, social functioning, and maintaining concentration, persistence and pace, and thus a minimal increase in mental demands or a change in the environment would not cause Plaintiff to decompensate.  Himes, 585 F. App'x at 764.  Furthermore, the ALJ examined Plaintiff's psychiatric treatment records and determined Plaintiff did not exhibit "any significant psychological or psychiatric symptoms or medical signs . . . [t]he overall record convincingly shows the claimant's behavior only reflects any significant mental symptoms every couple of months when she goes to her mental health appointment"  R. 48.  As for the third condition, the ALJ cited Plaintiff's Functional Reports indicating Plaintiff was able to function outside of a highly supportive living arrangement, as she was able to live independently.  R. 52-53.  Thus, substantial evidence supports the ALJ's determination Plaintiff did not meet the paragraph C criteria.  For all of these reasons, substantial evidence supports the ALJ's finding Plaintiff does not satisfy Listing 12.04.

### 3. Plaintiff Failed to Establish a Mental Impairment Satisfying Listing 12.07.

Listing 12.07 addresses somatoform disorders which are defined as "[p]hysical symptoms for which there are no demonstrable organic findings or known psychological mechanisms."  20 C.F.R. 404, Subpart P, Appendix 1, § 12.07.  A claimant meets Listing 12.07 if she satisfies the criteria in paragraphs A and B.  Id. §§ 12.00A, 12.07.  To satisfy 12.07A, the claimant must provide medical documentation of one of the following:  (1) history of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often, and alter life patterns significantly;  (2) persistent nonorganic disturbance;  or  (3) unrealistic

interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury. Id. § 12.07A.

Paragraph B lists impairment-related functional limitations that are incompatible with the ability to do any gainful activity. Id. To satisfy the criteria, a claimant must show at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. Id. § 12.07B. As discussed *supra*, the ALJ determined Plaintiff did not meet Listing 12.07B because Plaintiff had only mild limitations in activities of daily living, moderate deficiencies in social functioning and concentration, persistence and pace, and no episodes of decompensation. R. 30, 52.

Plaintiff argues the ALJ was required to explicitly analyze her somatoform disorder under Listing 12.07. Pl.'s Br. 9. However, at step three, the ALJ thoroughly considered the Listings and implicitly determined Plaintiff did not meet Listing 12.07. It was sufficient for the ALJ to have found that Plaintiff did not meet the paragraph B criteria, and it is clear the ALJ considered the relevant law and evidence. See Hutchison, 787 F.2d at 1463. Accordingly, substantial evidence supports the ALJ's determination Plaintiff did not meet Listing 12.07.

### 4. Plaintiff Failed to Establish a Mental Impairment Satisfying Listing 11.02.

Plaintiff argues the ALJ should have found her seizure disorder met or equaled Listing 11.02. Pl.'s Br. 9. Listing 11.02 contains the criteria for disability based on convulsive epilepsy, and requires documentation "by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in

spite of at least 3 months of prescribed treatment." 20 C.F.R. 404, Subpart P, Appendix 1, §

11.02. Additionally, a claimant must demonstrate the existence of daytime episodes, during

which she experiences loss of consciousness and convulsive seizures, or nocturnal episodes

"manifesting residuals which interfere significantly with activity during the day." Id., §§

11.02(A) & (B).

Under 11.02, the criteria may only be applied if the impairment persists "despite the

fact that the individual is following prescribed antiepileptic treatment," and requires "[a]t

least one detailed description of a typical seizure." Id. § 11.00(A). With respect to this

description, "The reporting physician should indicate the extent to which description of

seizures reflects his own observations and the source of ancillary information. Testimony of

persons other than the claimant is essential for description of type and frequency of seizures

if professional observation is not available." Id. Furthermore, when seizures occur at the

frequency stated in 11.02, evaluation of the severity of the impairment must include

consideration of the serum drug levels. Id.

The ALJ addressed Plaintiff's seizure condition and found that it did not meet Listing

11.02. R. 45-46, 34. As an initial matter, the ALJ noted no diagnostic or imaging studies

confirmed the existence of a seizure disorder. R. 46. As the ALJ noted: (1) a September

2001 MRI revealed normal findings, R. 881; (2) an April 2008 electroencephalogram

("EEG") revealed normal findings, R. 4837; (3) a December 2010 CT scan was

unremarkable, R. 899; (4) an April 2011 EEG scan revealed normal findings with no

evidence of seizure focality or epileptiform discharges, R. 990; (5) a July 2011 CT scan of

the head was unremarkable, R. 1049; (6) a January 2012 EEG was normal and the recorded

spell did not correlate with electroencephalographic changes, R. 46, 2894, 5962; (7) a March

2013 MRI revealed normal findings, R. 6067-69; (8) and an April 2014 EEG video monitoring study to verify the existence of a seizure disorder did not support an epilepsy diagnosis, and instead, revealed normal findings without post-ictal state, suggesting nonepileptic events, R. 6862-69. As the ALJ noted, despite the more than 7,000 pages of medical records there were no objective medical findings revealing or supporting a diagnosis of convulsive epilepsy.

Even presuming an epilepsy diagnosis, Plaintiff has not established her seizures occur more frequently than once a month in spite of at least 3 months of prescribed treatment, as required by Listing 11.02. Although treating physician and neurologist Dr. Anthony M. Murro initially diagnosed Plaintiff with epilepsy, and opined Plaintiff had one seizure every five days and upwards of eight convulsive tonic-clonic seizures per month, Dr. Murro never personally observed a seizure and did not confirm Plaintiff's subjective allegations of her seizure frequency with other witnesses. R. 493, 827-28. Furthermore, after the April 2014 EEG suggested Plaintiff did not suffer from epilepsy, Dr. Murro altered his diagnoses from epilepsy to nonepileptic episodes, or pseudoseizures, and ordered cognitive behavioral therapy. R. 7352.

Although treating physician and general practitioner Dr. Vikash C. Modi opined Plaintiff suffered from seizures one to two times a month, Dr. Modi's findings were based largely on Plaintiff's subjective allegations, which the ALJ found not credible. R. 50. Dr. Modi never personally observed a seizure, nor did he verify Plaintiff's subjective allegations with witnesses. The ALJ specifically found Plaintiff's allegations not credible because numerous treating physicians noted Plaintiff routinely exaggerates her symptoms. Id. Furthermore, the ALJ found Dr. Modi's findings inapposite with the medical record which

revealed only one observed seizure by a healthcare professional despite more than eight years of treatment records from February 2006 to September 2014. R. 45.

In sum, Plaintiff has not demonstrated she has convulsive epileptic seizures that occur more frequently than once a month, in spite of being on prescribed treatment for at least three months. The medical record does not support a diagnosis of convulsive epilepsy, as numerous objective imaging studies revealed normal findings. Furthermore, Plaintiff has not demonstrated her seizures occur at the frequency needed to meet Listing 11.02. Thus, substantial evidence supports the ALJ's finding that Plaintiff did not meet Listing 11.02 for convulsive epilepsy.

### B. The ALJ Properly Weighed and Evaluated Plaintiff's Treating Physician Opinions.

Plaintiff also argues the ALJ erred by failing to give appropriate weight to the opinions of three treating physicians, Drs. Modi, Murro, and Tyson. (Pl.'s Br. 4-8.) The Commissioner maintains the ALJ properly considered and weighed the opinions of Plaintiff's treating physicians. (Comm'r's Br. 18-24.) Substantial evidence supports the ALJ's evaluation of Plaintiff's treating physician opinions.

### 1. Standard for Evaluating Medical Opinions

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure

to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities).

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). In particular, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. §§ 404.1527(c)(1)-(2), (5). However, Social Security Ruling ("SSR") 96-6p provides that findings of fact made by state agency medical consultants regarding the nature and severity of an individual's impairments must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative

review.  SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996).  Lastly, under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating and other medical source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance.  SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996); see also 20 C.F.R. § 404.1527(d).

### 2.    Treating Physicians Dr. Modi

Dr. Modi evaluated Plaintiff in December 2011, March 2012, and November 2012.  In December 2011, Dr. Modi opined Plaintiff experienced one to two seizures a month but the seizures were controlled with medication.  R. 3134.  Dr. Modi further opined Plaintiff's illnesses might be improved with disability benefits.  Id.  In March 2012, Dr. Modi opined Plaintiff was unable to successfully or safely engage in gainful employment.  R. 2965.  In November 2012, Dr. Modi reiterated his opinion Plaintiff's conditions would improve if she was granted disability benefits.  R. 7253.

As discussed *supra*, the ALJ evaluated Dr. Modi's opinion, and assigned it negligible weight because Dr. Modi's evaluation of Plaintiff's seizures was largely based on Plaintiff's subjective allegations, which the ALJ found not credible and contrary to the evidence within the entire medical record.  R. 50.  The ALJ also found "[n]o functional limitations [could] be derived from the statements that [Plaintiff's] health might be improved with disability, Medicaid, or insurance."  Id.  The ALJ properly determined Dr. Modi's opinion that Plaintiff was unable to engage in gainful employment was entitled to no weight because it pertained to an issue reserved to the Commissioner.  See SSR 96-5p; 20 C.F.R. § 404.1527(d).  The ALJ did not err in evaluating Dr. Modi's opinion because the ALJ relied on substantial evidence in assigning Dr. Modi's opinion negligible weight.

### 3. Treating Physician Dr. Murro

Dr. Murro began treating Plaintiff in 2007. R. 827. In January 2010, Dr. Murro opined Plaintiff had a seizure disorder and could not work. R. 1386. Dr. Murro estimated Plaintiff had one seizure per five days, and took two days to recover from each. R. 2943. In December 2012, Dr. Murro opined Plaintiff had eight convulsive tonic-clonic seizures per month, and eight non-convulsive partial seizures per month. R. 493. However, Dr. Murro never personally observed a seizure and did not confirm Plaintiff's subjective allegations of her seizure frequency with a witness. R. 493, 827-28. On February 27, 2013, Dr. Murro again opined that Plaintiff was unable to work. R. 5952. Dr. Murro referred Plaintiff for an EEG evaluation which was conducted in April 2014. R. 6855. After the EEG revealed no epileptiform discharges and otherwise revealed normal results, Dr. Murro changed his diagnosis from epilepsy to non-epileptic episodes (pseudoseizures). R. 7352.

The ALJ properly noted Dr. Murro's statements regarding Plaintiff's ability to work were not entitled to any weight because they pertained to an issue reserved to the Commissioner. R. 49. The ALJ gave no weight to Dr. Murro's opinion on the reported number of seizures because, as explained *supra*, Dr. Murro had never personally observed a seizure and relied entirely on Plaintiff's subjective complaints which the ALJ found not credible. Id. Furthermore, Dr. Murro's finding concerning the number of seizures was against the weight of the medical record in which only a single seizure episode was documented. Id. Accordingly, substantial evidence supports the ALJ's decision to assign Dr. Murro's opinion negligible weight.

### 4. Treating Physician Dr. Tyson

In May 2013, treating psychiatrist Dr. Mary Lynn Tyson opined Plaintiff was "unable to sustain employment because of mental health and other medical issues for some time and certainly deserves disability." R. 7094. On October 13, 2014, Dr. Tyson completed a functional assessment, rating as "poor," Plaintiff's abilities to follow work rules, deal with the public, interact with a supervisor, deal with work stresses, maintain attention and concentration, and understand, remember, and carry out complex job instructions and detailed, but not complex job instructions. R. 7250-51. Dr. Tyson rated as "fair," Plaintiff's abilities to relate to coworkers, use judgment, function independently, and understand, remember and carry out simple job instructions. R. 7251. Plaintiff's abilities to behave in an emotionally stable manner and demonstrate reliability were rated as "fair to poor," but her ability to maintain her personal appearance was rated as "good." Id. Dr. Tyson opined Plaintiff had numerous medical concerns related to her seizure disorder, hypertension, chronic anemia, back pain, bipolar disorder, depression, and PTSD, and stated "I have no doubt that this patient deserves disability." Id.

The ALJ assigned Dr. Tyson's opinion no weight, finding her opinions inconsistent with the medical record, Plaintiff's testimony, and consultative examiner opinions establishing Plaintiff could perform a variety of activities of daily living. These activities included making her bed, taking medication, preparing simple meals, dusting, handling appointments, using public transportation, paying bills, counting change, handling a savings account, and watching television. R. 52. Dr. Tyson's functional assessment was also contrary to the medical record and consultative examiner opinions finding Plaintiff did not have any marked limitations in her activities of daily living, social functioning, and ability to maintain

concentration, persistence, or pace. R. 562, 1706-09. Furthermore, the ALJ noted Dr. Tyson's functional assessment was largely based on Plaintiff's subjective complaints which the ALJ found not credible. R. 50. Finally, the ALJ gave no weight to Dr. Tyson's statements that Plaintiff was entitled to disability, finding that issue reserved to the Commissioner. Id. Thus, substantial evidence supports the ALJ's decision to assign negligible weight to Dr. Tyson's assessment.

Finally, Plaintiff argues the ALJ erred by failing to recontact Plaintiff's treating physicians. Pl.'s Br. 8. Here however, the ALJ did not err in deciding not to recontact Plaintiff's treating physicians because the evidence before the ALJ was sufficient to determine Plaintiff was not disabled. See Couch v. Astrue, 267 F. App'x 853, 856 (11th Cir. 2008) (finding the duty to recontact claimant's treating physicians did not arise where consultative examiners, claimant's daily activities, and medical records were adequate to determine claimant was not disabled). Here, the ALJ properly relied on state agency consultants, the objective medical evidence, and Plaintiff's daily activities in determining Plaintiff was not disabled.

In sum, the ALJ relied on substantial evidence in finding Plaintiff did not meet any of the listed impairments at step three. Furthermore, substantial evidence supports the ALJ's decision to assign negligible weight to Drs. Tyson, Murro, and Modi's opinions. The ALJ was not required to recontact any of Plaintiff's treating physicians because the evidence in the record was sufficient for a determination that Plaintiff was not disabled. Thus, Plaintiff's arguments are insufficient to warrant reversal or remand.

## IV.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 3rd day of May, 2017, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA